# Thompson *against* Lyle.

On a libel filed in the District Court of the United States, to recover damages against the master of a brig then lying in the port of Philadelphia, for non-delivery of goods on a former voyage, at the port of New Orleans, the district judge ordered process to issue according to the prayer of the petition, without prejudice to the question of jurisdiction. Under this process, the brig was seized and detained. Afterwards, on a plea to the jurisdiction, the district judge dismissed the libel. *Held*, that the order of the judge was a sufficient justification to the defendants for the seizure and detention of the vessel.

The District Court of the United States is a court of record, and is not to be regarded as an inferior court, so that their proceedings in causes not within their jurisdiction may be deemed void, and questioned collaterally.

ERROR to the District Court for the city and county of *Philadelphia*.

Thomas Lyle, the plaintiff below, brought this action of trespass *vi et armis* against William R. Thompson, Swain, Demarest, and others, for seizing his brig Franklin, and detaining her three days, when about to proceed on her voyage from the port of Philadelphia to New Orleans.

It appeared in evidence that on the 13th March 1838, Swain and Demarest of Dayton, Ohio, filed their libel addressed to the

[Thompson v. Lyle.]

Hon. Joseph Hopkinson, Judge of the District Court of the United States, complaining that they had shipped certain goods and merchandise on board the brig Franklin, Lyle, master, then lying at Philadelphia, to be carried to New Orleans, and delivered to Champomier and Giraud, consignees. That said Lyle, on the 28th of December 1836, executed and delivered to the agents of said libellants a bill of lading for the said goods. That Lyle agreed to take care of said goods and deliver the same to said consignees at New Orleans. That the brig Franklin proceeded with said goods on board and arrived at New Orleans. That Lyle did not deliver said goods to said consignees, but delivered them to some other person, by whom they were sent out of their destined course, to the great damage of the libellants. That the premises are true and within the admiralty and maritime jurisdiction of this court, and prays process in due form of law against the said brig.

To this an affidavit was annexed by Wm. R. Thompson, that he was a member of the firm of Wm. R. Thompson & Co.; that the said firm were authorized by the libellants above-named to conduct this action, and that the facts set forth in the foregoing libel were true to the best of deponent's knowledge and belief.

On the 14th March 1838, Judge Hopkinson endorsed this libel as follows: " Issue process according to the prayer of the petition. Jos. Hopkinson. *Note:* The process is ordered in this case without prejudice to the question of jurisdiction. J. H."

On the same day the attachment was issued, and was returned on the 16th attached, and same day stipulation entered. On the same 16th March, Thomas Lyle put in his plea to the jurisdiction of the court, and on the 20th April 1838, the libel was dismissed.

A number of bills of exception to evidence were taken on the trial in the court below, and also to the answers of the court to various points made by the defendant, which it is unnecessary to state, because, although argued at length here, the case was decided on one ground only. The court below charged the jury that the District Court of the United States had no jurisdiction, and the record of their proceedings was conclusive evidence of this, and therefore the process was void, and if sued out at the instance and under the direction of Thompson, it would be a trespass in him to attach, and the form of the action would be trespass.

A verdict was rendered against Wm. R. Thompson, the other defendants either not having been originally served or being discharged by a *nolle prosequi* entered by the plaintiff.

*Gerhard*, for the plaintiff in error, insisted that the order of the judge that the attachment should issue was a sufficient justification for all that was done in pursuance of it. He exercised the jurisdiction, and that is sufficient. It was for him to determine whether he would do so, and it would be unjust that those who

acted under his authority should suffer for so doing. The proceedings of the defendants were regular and according to law, and the District Court of the United States is a court of record, whose doings cannot be questioned collaterally by a state court. He cited 2 *Rawle* 201; 6 *Bing.* 85.

*Fallon, contra,* contended that the decision of the District Court was that they had not jurisdiction, and that decision was conclusive. Then, if the court had not jurisdiction, their acts are void, and constitute no justification to such as choose to act according to them. The District Court is a court of inferior jurisdiction, and of limited powers: and when 'it goes beyond the powers given to it, its proceedings are a nullity. The rule is otherwise only where the court has a general jurisdiction. 4 *Rawle* 273; 1 *Pet. Cir. Co. Rep.* 199; 16 *E. C. L.* 19; 3 *Term Rep.* 185; 10 *Serg. & Rawle* 191; 12 *Johns.* 265; 13 *Johns.* 444.

The opinion of the Court was delivered by

KENNEDY, J.—As we are of opinion that this action cannot be maintained, it will therefore be unnecessary to notice the various matters assigned for error, or to pass upon the points involved in them. The action was held to lie, in the court below, upon the ground that the District Court of the United States, from which the process of attachment was sued out, and by virtue whereof the brig or vessel of the plaintiff below was attached and detained for two or three days, had no jurisdiction over the cause of *action;* that the process was therefore *void,* and if sued out at the instance of the defendant, Thompson, for the purpose of having the brig attached, he thereby made himself responsible to Thomas Lyle, the plaintiff, as a trespasser for the taking of the brig under the process so sued out. Though the District Court of the United States be one of those tribunals which Congress, under the Constitution, has established, and, in reference to the Supreme Court, thereby directed to be established, is denominated an *inferior* court, yet I take it that neither the *District* Courts nor the *Circuit* Courts of the United States are of *inferior* jurisdiction, at least not so as to render their process and proceeding in causes, without their jurisdiction, absolutely void. See *Stanley* v. *The Bank of America,* (4 *Dall.* 11); *M'Cormick* v. *Sullivan,* (10 *Wheat.* 192); 1 *Kent's Com.* 303. The District Court of the United States has not only cognizance of all lesser crimes and offences cognizable under the authority of the United States, committed within its district, or upon the high seas, which are punishable by *fine* not exceeding $500, or by *imprisonment* not exceeding six months; but likewise exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, of seizures under impost, navigation, or trade laws of the United States, where seizures are made upon the high seas, or within waters within its district, navigable from

[Thompson v. Lyle.]

the sea with vessels of ten or more tons burthen; also of all other seizures made under the laws of the United States; and likewise of all suits for penalties and forfeitures incurred under those laws. It has also cognizance, concurrent with the circuit courts and state courts, of causes where an alien sues for a tort committed in violation of the law of nations, or of a treaty of the United States; and of all suits *at common law,* in which the United States are plaintiffs, and the matter in dispute amounts to $100, &c. 1 *Kent's Com.* 303–4. It is also clearly a court of record, for all its acts and judicial proceedings are truly registered as a perpetual memorial and testimony thereof. The registry made of its proceedings, in every case, is called the record of the court, and will not admit of dispute or contradiction; and can only be proved by the production and inspection of it, or a certified copy thereof under the seal of the court. It may imprison, which belongs only to a court of record, as it is said, 3 *Bl. Com.* 24–5. And it is certainly not the court of a private man, such as a court baron, &c. which may be regarded as an *inferior* court, and not a court of record. This latter court, and the like, may be considered courts of such *inferior* jurisdiction, that their process and proceedings, in causes not within their jurisdiction, may be held *void,* and objected to as such, in a collateral action, without their being quashed or reversed previously by any Superior Court upon writ of error, or *certiorari* from the same. Besides, it would not only be unreasonable, but likewise unjust, in this case, to make Thompson, the plaintiff in error, responsible for the illegality of the process, by virtue of which the vessel of the defendant in error was attached and taken out of his possession, because it was specially allowed and directed to be issued by the Judge of the court, who may be presumed to have been better acquainted with the extent of the jurisdiction of the court than the plaintiff in error; and who, therefore, ought to be considered the trespasser in the transaction, if any one can be. But it will not be pretended that a Judge of a court of record can be so considered for an error of judgment committed by him in his judicial action, or be made responsible to the party injured by the same. The judgment of the court below is therefore reversed.

Judgment reversed.